## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOUSTON METHODIST SUGAR LAND )
HOSPITAL )
16655 Southwest Freeway )
Sugar Land, TX 77479 )
  )
            Plaintiff, )
  )   Case No. 1:25-cv-1906
          v. )
  )
ROBERT F. KENNEDY, JR., in his Capacity as )
Secretary of the U.S. Department )
of Health and Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201 )
  )
           Defendant. )
_____ )

## COMPLAINT

Houston Methodist Sugar Land Hospital (the "Hospital" or "Provider") brings this action against defendant Robert F. Kennedy Jr., in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"). Based on direction from a federal agency and consistent with caselaw, a contractor was obligated to calculate certain reimbursement to the Hospital in a specified way. Yet the contractor refused to do so, despite having the relevant information, and a final agency decision wrongly permitted this non-compliance. This arbitrary and capricious decision must be set aside, and the Hospital must be appropriately reimbursed.

## INTRODUCTION

1.     This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), the Administrative Procedure Act, 5 U.S.C. §§ 706 *et seq.* (the "APA"), and other authorities. The Medicare payment issue in this action pertains to how inpatient hospital days should be counted for purposes of calculating the Hospital's Medicare

1

disproportionate share hospital ("DSH") payments for the fiscal year ("FY") ending on December 31, 2015.

2.      This is a civil action brought to obtain judicial review of a final decision on this issue rendered on April 14, 2025, by the Provider Reimbursement Review Board ("PRRB" or "Board") (attached as **Exhibit A**).  The Hospital received the decision for which judicial review is sought in PRRB Case No. 19-1956.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. § 1331 (federal question) and § 1361 (mandamus).

4.      Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## PARTIES

5.      The Hospital, located in Sugar Land, Texas, is Houston Methodist Sugar Land Hospital (Medicare Provider No. 45-0820). At all relevant times, the Hospital had a Medicare provider agreement and was eligible to participate in the Medicare program.

6.      Defendant, Robert F. Kennedy Jr., Secretary of HHS, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program.  Defendant Kennedy is sued in his official capacity.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

7.      The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. § 1395c.  The Medicare program is federally funded and administered by the Secretary through the Centers for Medicare and Medicaid Services ("CMS") (formerly the Health Care Financing Administration ("HCFA")) and its contractors.  42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).

8.     CMS implements the Medicare program, in part, through rulemaking.  *See* 42 C.F.R. § 401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are compiled in CMS manuals.  The Secretary also issues other subregulatory documents relating to the Medicare program, which generally do not have the force and effect of law.

9.     The Medicare program has five parts: A, B, C, D, and E.  Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.  42 U.S.C. §§ 1395c to 1395i-6.  Part A services are furnished to Medicare beneficiaries by "providers" of services, including hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. § 1395cc, to furnish hospital services to Medicare beneficiaries.  This action involves only Part A of the Medicare program.

10.     CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through Medicare Administrative Contractors ("MACs").  *See* 42 U.S.C. § 1395kk-1(a).  Each Medicare-participating hospital is assigned to a MAC.  42 U.S.C. § 1395kk-1(a)(3)(B).  The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.  *See* 42 C.F.R. § 405.1803.

**THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM**

11.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, including the Hospital, for inpatient hospital operating costs.  *See* 42 U.S.C. § 1395ww(d).  Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually

incurred by the hospitals.  Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments.  *See id.*  One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment.  *See* 42 U.S.C. § 1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

12.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments.  42 U.S.C. § 1395ww(d)(5)(F).

13.    The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and took effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

14.    Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients.  These higher costs have been found to result from the generally poorer health of these patients.  The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

15.    There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. § 1395ww(d)(5)(F)(i)(II)).  The Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP." 42 U.S.C. § 1395ww(d)(5)(F)(v) and (vi).

16.    The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").  42 U.S.C. § 1395ww(d)(5)(F)(vi).  Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of those patients.

17.    The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement.   The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

18.    The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

19.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] [P]art A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.  The Medicaid Fraction is at issue in this case.

20.     The statute further provides that, for purposes of determining the Medicaid Fraction, "the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).   Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act).  The Secretary's non-inclusion of section 1115 waiver days in the Hospital's Medicaid Fraction for its 2015 cost year is at the heart of this action.

## LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH CIRCUIT AND D.C. CIRCUIT DECISIONS

21.     In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Secretary argued that, for hospital days of a patient covered under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "eligible for inpatient hospital services."  *See id.* at 46.  The court disagreed.  *Id.* at 46-47  According to the court, "[i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)]  that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether

or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment." *Id.* at 47.

22.     A similar issue in *HealthAlliance* was then presented in *Forrest General Hospital*, 926 F.3d 221 (5th Cir. 2019). The Secretary argued that an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *Id.* at 232. In determining that the uncompensated care pool, eligible for inpatient services, was in fact covered under a section 1115 waiver and thus those patient days must be part of the Medicaid Fraction, the Fifth Circuit found "[then-] Judge Ketanji Brown Jackson's excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion clearly and convincingly explains why the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period." *Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *Id.* at 228-29 (emphasis added).

23.     Following *Forrest General*, the Secretary continued to litigate, and lose, the issue of whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which did not specifically mention inpatient hospital benefits, should be included in the Medicaid Fraction. *See Bethesda Health, Inc. v. Azar*, 980 F.3d 121, 122 (D.C. Cir. 2020), *aff'g, Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (2019).

24.     As a result of the above adverse court decisions, CMS issued manual instructions acquiescing to the Fifth Circuit and D.C. Circuit decisions. *See* CMS Manual Instructions System, Change Request (CR) 12669, Transmittal No. 11912 (March 16, 2023) (attached as **Exhibit B**).

The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> For cost reports that are open via a Provider Reimbursement Review Board (PRRB) appeal that has not yet been heard before the PRRB, Section 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date.  In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
> [a.] For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.
>
> [b.] The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.
>
> [c.] The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.
>
> [d.] The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

*Id*.

25.     In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only.  *See* 88 Fed.  Reg.  58640 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

26.    This case challenges the MAC's refusal to include all Medicaid eligible days, including Section 1115 waiver days, in the Medicaid Fraction for the cost year at issue in this case (CYE 12/31/2015).

## THE RELEVANT MEDICARE APPEALS PROCESS

27.    By statute, the Board has the "power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter [Subchapter XVIII of Chapter 7 of Title 42 of the U.S.C.] or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this section [1395oo]." 42 U.S.C. § 1395oo(e).

28.    By resulting regulation, at the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare.  42 C.F.R. § 413.20.  Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year.  42 C.F.R. § 405.1803.  The statute requires only that the provider be "dissatisfied with a final determination of the [Medicare Administrative Contractor (MAC)] as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this title." 42 U.S.C. § 1395oo(a)(1)(A)(i).

29.    If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a).  In addition to

having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board decides questions relating to its jurisdiction and procedure. *See* 42 U.S.C. § 1395oo. Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

30.    The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877. The Secretary has delegated authority under the statute to review Board decisions to the CMS Administrator. *See* 42 C.F.R. §§ 405.1875, 405.1877. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after review of the Board's decision. *See* 42 C.F.R. § 405.1877(a)(2).

31.    A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five (5) days after the date of issuance of a PRRB document.

32.    The Secretary is the proper defendant in such an action. *See* 42 C.F.R. § 405.1877(a)(2). Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d),

CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

33.    Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

34.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).  Further, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## SPECIFIC FACTS PERTAINING TO THIS CASE

*Dismissal of Section 1115 Waiver Days "Issue"*

35.    On November 29, 2018, the MAC issued an NPR for the Hospital's cost year ending December 31, 2015.  On May 24, 2019, the Board received the Provider's individual appeal request appealing its DSH adjustment.   The Provider timely appealed the non-inclusion of Medicaid eligible days, saying "[t]he MAC, contrary to the regulation, failed to include all Medicaid eligible days, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." Ex. A at 3 (emphasis added).  The italicized language above demonstrates that the Provider appealed ***all*** Medicaid eligible days,

including section 1115 waiver days.  By definition, section 1115 waiver days are Medicaid eligible days.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); 42 C.F.R. § 412.106(b)(4)(i)-(ii).

36.    On April 14, 2025, the Board dismissed the Provider's appeal of what it termed the "section 1115 Waiver days issue."  Ex. A at 13.  The grounds for dismissal were that "[b]ecause the Provider did not raise the section 1115 Waiver days prior to the deadline to add issues, and it is a distinct issue, the Board finds that the issue was not properly or timely appealed. The DSH Medicaid Eligible Days issue as stated in the original appeal request cannot be construed to include section 1115 Waiver days. Additionally, there is no indication that any 1115 waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal."  Ex. A at 15.

37.    Further, the Board claimed that "even if the Provider had included [the section 1115 waiver days issue] in its appeal request (which it did not), the Provider failed to properly develop the issue in its position paper filings.  First, the Provider's preliminary position paper does not even mention § 1115 waiver days (much less even identify the specific 1115 waiver day program(s) at issue) notwithstanding its obligations to do so pursuant to 42 C.F.R. §§ 405.1853(b)(2)-(3) and 412.106(b)(4)(iii) and Board Rule 25 (2015).  As noted above, pursuant to 42 C.F.R. § 412.106(b)(4)(iii), the Provider 'has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under this paragraph, and of verifying with the State that a patient was eligible for Medicaid during each claimed patient hospital day.'  Similarly, 42 C.F.R. § 405.1871(a)(3) confirms that the Provider has the 'burden of production of evidence and burden of proof by establishing, by a preponderance of the evidence, that the provider is entitled to relief on the merits of the matter at issue.'  The Provider's briefing fails to establish the merits of its position on the alleged § 1115 waiver days sub-issue."  Ex. A at 16.

38.     The Board continues in its dismissal stating that "even in the Provider's final position paper, the Provider fails to identify what § 1115 waiver program(s) are involved and whether or not the § 1115 waive[r] days at issue would qualify under 42 C.F.R. § 412.106(b)(i)-(ii) as 'days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act' and the patients underlying those days are 'deemed eligible for Medicaid' based on 'the patient [being] eligible for inpatient hospital services . . . under a waiver authorized under section 1115(a)(2) . . . on that day, regardless of whether particular items or services were covered.'  Rather, the final position paper is perfunctory in that it only makes perfunctory conclusions [29].  Again, the Provider failed to so develop its position paper notwithstanding 42 C.F.R. §§ 405.1853(b)(2)-(3) and 412.106(b)(4)(iii) and Board Rule 25 (Nov. 2021) as applied via Board Rule 27.2."  Ex. A at 16.

39.     The Board states in footnote 29, "For example, [the Provider representative] cites to *Forrest General Hosp*., 926 F.3d 221 (5th Cir. 2019) for the proposition that 'the plain language of the statute and regulations require inclusion in the Medicaid Fraction of the days belong to individual who are included in a section 1115 demonstration project that provides benefits through an uncompensated care pool.'  However, [the Provider representative] fails to explain why this sweeping statement is relevant to the § 1115 waiver days at issue.  Is [the Provider representative] asserting that the § 1115 waiver days at issue relate to an uncompensated care pool?  Is that pool similar to that in *Forrest General Hosp*.? [The Provider representative] fails to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2).  Indeed, the quoted sentence is the only time the final position paper references 'uncompensated care pool." Ex. A at 16, n. 29.

40.     The Board goes on to compare the Provider's language in its appeal request and final position paper to language from the provider's issue statement in *Evangelical Community Hospital, et al. v. Becerra* in its evaluation of whether Provider met Board content requirements. No. 21-cv-01368, 2022 WL 4598546 (D.D.C. Sep. 30, 2022).  The Board found "that neither the appeal request nor final position paper met the Board content requirements is consistent with the recent ruling by the U.S. District Court for the District of Columbia in *Evangelical Community Hospital, et al. v. Becerra* [No. 21-cv-01368, 2022 WL 4598546 (D.D.C. Sep. 30, 2022).]  In that case, the provider's issue statement was tied to improper calculation of the DSH payment and read in part, '[t]he intermediary erred by incorrectly calculating the SSI percentage for inclusion in the 'Medicare Fraction' for purposes of the calculation of the provider's [disproportionate share] payment.' [Id. at *5.]  The Court found that '[t]his description does not specify which portion of the calculation was incorrect nor how the fraction should have been calculated differently.' [Id.] The Court found that this description of the issue was a violation of Board rules and a proper basis on which for the Board to dismiss the appeal.  [Id.]  Here, the Board makes the same finding based on similarly overly generalized language." Ex. A at 16.

41.     First, the PRRB's assertion that it is an independent basis for dismissal that "there is no indication that any 1115 waiver days were included with the as-filed cost report" is arbitrary and capricious, especially because MACs frequently accept days identified after the cost report is filed.  Not all of the State Medicaid eligibility data was available when the at-issue cost report was filed.  The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know who all of its Medicaid patients are at the time of their admissions.  Thus, the total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed.  This variability applies to

section 1115 Waiver days, as they share many features with Medicaid eligible days, including the possibility of retroactive eligibility.

42.     Second, there is no such thing as a "section 1115 Waiver days issue" nor is there a "§ 1115 waiver days sub-issue." The "issue" properly before the Board was the inclusion of all Medicaid eligible days for purposes of calculating DSH reimbursement.

43.     The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an "issue" and a time limit on adding an "issue" – not on "sub-issues" or "components" of an issue. Both a June 25, 2004 proposed rule (69 Fed. Reg. 35716) and a May 23, 2008 final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the Disproportionate Payment Percentage.

44.     For example, the proposed rule states that:

> in order to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy… Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722. Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called generic Medicaid eligible days also governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. To the extent that the

regulations were interpreted as requiring providers to appeal sub issues or components of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute.

45.     Rule 8 of the August 29, 2018 version of the PRRB Rules—which provides that "each contested component must be appealed as a separate issue"—is internally inconsistent with Rule 7. Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the cost report adjustment is incorrect, how the payment should be determined differently, the reimbursement effect, and the basis for jurisdiction before the PRRB. Thus, Rule 8 is both inconsistent with the regulations and Rule 7. Further, whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7. This direction is flatly inconsistent with Rule 7, as explained above, or at least is confusing and misleading.

46.     Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement to specifically identify the items in dispute." Thus, Rule 8 proceeds from the misunderstanding that the regulations require that sub-issues or "components" of an issue must be identified, when in fact, and as explained above, this is not true. For this reason, Rule 8's requirement to identify "components" of an issue is invalid.

47.     The supposed requirement that the provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in the PRRB's rules. The PRRB has no authority to expand or constrict its jurisdiction given

to it by Congress, and thus its requirement that providers must describe sub issues or components of issues simply to obtain a hearing is in conflict with the statute and invalid.

48.     Additionally, Provider made no mention of *Forrest General Hospital v. Azar* in its final position paper, as the Board contends.  Rather, Provider cites to *Forrest General* in its Jurisdictional Response (attached as **Exhibit C**) to show that the MAC's argument that the Provider abandoned the "issue" of section 1115 waiver days was not an appropriate jurisdictional challenge.  Ex. C at 2.  The Board ruled that this briefing did not meet the requirements of 42 C.F.R. § 405.1853(b)(2).  However, that regulation governs the requirements for position papers, *not* jurisdictional challenges.  Jurisdictional Responses are governed instead by Rule 44.4.3 of the August 28, 2019 version of the PRRB Rules, which simply states "Providers must file a response within 30 days of the Medicare contractor's jurisdictional challenge.  Failure to respond will result in the Board making a jurisdictional determination with the information contained in the record." There are no specific requirements governing the content of Jurisdictional Responses.  Impugning the content requirements of a position paper onto a jurisdictional response is arbitrary and capricious, and unsupported by law.

49.     In *Azar v. Allina Health Services et al.*, the Supreme Court held, "that the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutorily required public notice-and-comment process.  *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579 (2019); *See also* 42 U.S.C. § 1395hh(b).  The Supreme Court did not disturb the D.C. Circuit's holding below that "the Medicare Act requires notice-and-comment rulemaking for any (1) "rule, requirement, or other statement of policy" that

(2) "establishes or changes" (3) a "substantive legal standard" that (4) governs "payment for services." *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id.*

50. Rule 8 of the August 29, 2018 version of the PRRB Rules—which was in effect at the time of this appeal—specifies that certain issues must be appealed separately. Rule 8 changed a "substantive legal standard" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice and comment rulemaking, and it is therefore invalid.

51. Finally, the Board's comparison of the Provider's language in its initial appeal and final position paper to the provider's language in *Evangelical Community Hospital, et al. v. Becerra* misses the mark. The Provider does indeed "specify which portion of the calculation was incorrect" and "how the fraction should have been calculated differently" in its initial issue statement stating "[t]he MAC, contrary to the regulation, failed to include all Medicaid eligible days, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." Ex. A at 3 (emphasis added). The Provider stated in its final position paper (attached with Exhibit I as **Exhibit D**) that it "disagrees with the calculation of the second computation of the disproportionate patient percentage, set forth at 42 CFR § 412.106(b) of the Secretary's Regulations," specifically stating that it "is seeking reimbursement for an additional 3,951 Medicaid Eligible days." Ex. D at 7. Additionally, Provider included the listing of Medicaid eligible days it contends should be included in "Exhibit I" of its

final position paper, titled "Medicaid Acute Paid Days." Ex. D at 15-41. Moreover, *Evangelical Community Hospital* is a non-precedential, non-binding opinion.

*Dismissal of Medicaid Eligible Days Issue*

52.     The Board dismissed the DSH Payment – Medicaid Eligible Days issue stating that "[s]pecifically, the Board finds that the Provider has failed to satisfy the requirements of 42 C.F.R. §§ 405.1853(b)(2)-(3) and 412.106(b)(iii) and Board Rules 25.2.1 and 25.2.2 related to identifying the days in dispute (a material fact) and the timely submission of documentary evidence required to support its claims or describe why said evidence is unavailable, which the Provider has failed to do." Ex. A at 13.

53.     The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was due to it finding that "the Provider also failed to fully develop the merits of the Medicaid eligible days issue because the provider has failed to identify any specific Medicaid eligible days at issue (much less any supporting documentation for those days)." Ex. A at 12.

54.     The Board further stated that "pursuant to 42 C.F.R. § 412.106(b)(iii), the Provider has the burden of proof 'to prove eligibility for each Medicaid patient day claimed' and, pursuant to Board Rule 25, the Provider has the burden to present that evidence as part of its position paper filing unless it adequately explains therein why such evidence is unavailable. As the Provider failed to identify even a single Medicaid eligible day as being in dispute as part of the position paper filing (much less provide the § 412.106(b)(iii) supporting documentation), notwithstanding its obligations under 42 C.F.R. §§ 412.106(b)(4)(iii) and 405.1853(b)(2)-(3) and Board Rule 25, the Board finds that there are no such days in dispute and that the actual amount in controversy is $0." Ex. A at 12-13.

55.     As to position papers, 42 C.F.R. § 405.1853(b)(2)-(3) provides only:

(2) The Board has the discretion to extend the deadline for submitting a position paper. Each position paper must set forth the relevant facts and arguments regarding the Board's jurisdiction over each remaining matter at issue in the appeal (as described in § 405.1840 of this subpart), and the merits of the provider's Medicare payment claims for each remaining issue.

(3) In the absence of a Board order or general instructions to the contrary, any supporting exhibits regarding Board jurisdiction must accompany the position paper. Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

42 C.F.R. § 405.1853(b). This regulation does not require providers to enumerate in position papers the specific Medicaid eligible days at issue, which are important to the MAC's—but not the PRRB's—adjudication.

56.    The Provider also was compliant with PRRB Board Rules, which do not require a detailed listing of Medicaid Eligible days.  Board Rule 25 relates to the submission of documents necessary to support a provider's position.  Board Rules specifically direct that protected health information or other personally identifiable information "is generally not necessary for documentation submitted to the Board." Board Rule 1.4.  A detailed listing, while necessary for the MAC's ultimate audit of the Provider's claims, was not necessary for the PRRB's consideration of the issue.

57.    The Board's references to Provider's obligations under 42 C.F.R. §§ 412.106(b)(4)(iii) and 405.1853(b)(2)-(3) are similarly unavailing.  § 412.106 relates to a provider furnishing data for its DSH computation, and not to any requirement of what must be filed with the Board.  Meanwhile, § 405.1853(b)(2)-(3) simply requires position papers to set forth the "relevant facts and arguments" regarding Board jurisdiction and the merits, with supporting exhibits.  Neither required the Provider to submit a detailed listing with its position papers.

58.    Furthermore, the Board's supposed conclusion that the "actual amount in controversy is $0," Ex. A at 13, was arbitrary and capricious.  Plaintiff's Preliminary Position Paper (attached as **Exhibit E**) specifically listed the reimbursement impact of the Medicaid Eligible Days issue as "$19,913."  Ex. E at 7.  Moreover, Plaintiff submitted two listings of Medicaid eligible days – an unredacted listing of Medicaid Acute Paid Days submitted with its final position paper on October 29, 2024 (Ex. D at 15-41) and an updated redacted listing of Medicaid Eligible Days submitted shortly after the submission of its final position paper, on November 23, 2024 (attached as **Exhibit F**).  The Board took issue with the November 23, 2024 listing because the listing was submitted "more than 4 years after the deadline for that exhibit to be included with its preliminary position paper filing consistent with Board Rule 25.2.2" and failed "to explain the following critical information: (a) why it was being filed so late (i.e., upon what basis or authority should the Board accept the late filing); (b) why the listing was not previously available, in whole or in part (i.e., it is not clear why the Provider failed to identify a single day at issue until more than 4 years after this appeal was filed and more than 8 years after the fiscal year at issue had closed)."  Ex. A at 12.

59.    Further, the Board ruled that "[n]either the Board Rules nor the May 29, 2019, Case Acknowledgment and Critical Due Dates permit the Provider to file a supplement to its preliminary position paper" and "[g]iven the fact that the material facts (e.g., the days at issue) and all available exhibits were required to be part of the position paper filing, if the Board were to accept a supplemental listing, it would need to be either be a refinement of its preliminary position paper or a supplement of documents that were identified in the preliminary position paper as being unavailable consistent with Board Rule 25.2.2.  However, neither the preliminary position paper nor the listing filed identified any 'unavailable' exhibits consistent with Board Rule 25.2.2.

Further, the listing cannot be considered a refinement of the position paper since no specific days or listing were included with the preliminary position paper." Ex. A at 12.

60.    Notably, contrary to the Board's findings, the Provider's preliminary position paper stated that the Provider was "seeking reimbursement for an additional 155 Medicaid Eligible days. The Provider, in this appeal, contends that the documentation necessary to pursue DSH was not available from the State of Texas in time to include all DSH/Medicaid Eligible Days on the cost report." Ex. E at 5. This statement, along with Provider's explanation that "Medicaid Eligible Days results change over time. For this reason, providers generally prefer to prepare listings as close in time to a Hearing, Audit or Settlement as possible. Accordingly, the number expressed here may not be the number [of Medicaid Eligible days the Provider wishes to add] presented at hearing or settlement" and "[d]ue to the limitation on Medicaid database, [Provider] was unable to determine eligibility for several patients and; therefore, decided to exclude such patient days from the DSH calculation in originally filed cost report" would make the listings submitted on October 29, 2024 and November 23, 2024, respectively, a "refinement" of and a supplement to both of the Provider's position papers. Ex. E at 6-7. Notwithstanding the fact that a detailed listing is not necessary for the Board's adjudication, Provider cannot be expected to produce a listing of days that have not yet been confirmed by the State. Additionally, the Board received the first listing on October 29, 2024, over five months before issuing a decision. Had the Board considered either of the listings submitted by the Provider, the Board had more than enough time and information to confirm jurisdiction and properly adjudicate the issue. Thus, it was arbitrary and capricious for the Board to find that "the amount in controversy is $0" and to dismiss Provider's appeal.

## Count I
### Judicial Review Under the Medicare Act and the APA
**(The Board's Dismissal of the Section 1115 Days Component was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

61.     The Hospital incorporates by reference paragraphs 1-60 of this Complaint.

62.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," *id.* § 706(2)(E).

63.     The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II
### Judicial Review under 28 U.S.C. § 1331 and the APA
**(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

64.     The Hospital incorporates by reference paragraphs 1-63 of this Complaint.

65.     The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear the Hospital's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

66.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," id. § 706(2)(E).

67.     The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary and capricious, an abuse of discretion, and contrary to the Medicare Act.

## Count III
## Due Process Violation

68.     The Hospital incorporates by reference paragraphs 1-67 of this Complaint.

69.     The Hospital has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Hospital.

70.     By imposing a requirement that the Hospital specifically identify "section 1115 Waiver days" in its appeal request, the Board deprived the Hospital of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

## Count IV
## Mandamus

71.     The Hospital incorporates by reference paragraphs 1-70 of this Complaint.

72.     Under 28 U.S.C. § 1361, federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

73.     The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction and review of EJR requests.

74.      The Secretary's MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023).   These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

24

75.    The Manual Instructions provide an independent legal basis, outside of the Hospital's appeal before the Board, for the Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

76.    The Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

**Count V**
**All Writs Act**

77.    The Hospital incorporates by reference paragraphs 1-76 of this Complaint.

78.    The DSH payments at issue violated the Medicare Act and APA.  Under the All Writs Act, 28 U.S.C. § 1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

79.    This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payments to the Hospitals and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

**Count VI**
**Breach of Covenant of Good Faith and Fair Dealing**

80.    The Hospital incorporates by reference paragraphs 1-79 of this Complaint.

81.    Through the Board's refusal to act, CMS has violated the implied covenant of good faith and fair dealing, which is an implied covenant in the agreement between CMS and the Hospital.

82.    CMS's breach of the implied covenant of good faith and fair dealing has caused the Hospital significant damages.

### Count VII
### Judicial Review Under the Medicare Act
### (The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)

83.     The Hospital incorporates by reference paragraphs 1-82 of this Complaint.

84.     Under 42 U.S.C. § 1395hh(b): "the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

85.     As there was no public notice-and-comment period for Rule 8 of the August 21, 2008 version of the PRRB Rules, the August 29, 2018 version of Rule 8 acts as a logical extension of the initial publication of Rule 8.  Because Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and the Board's implementation of the August 29, 2018 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

### Count VIII
### Judicial Review Under the Medicare Act
### (Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 Component are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)

86.     The Hospital incorporates by reference paragraphs 1-85 of this Complaint.

87.     The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

88.     Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the statute authorizing the Provider Reimbursement Review Board appeals process and is inconsistent with statute and regulation.

89.     Moreover, the Board's requirement that providers had to identify components of issues arbitrarily and capriciously has denied providers including the Hospital the appeal rights to which they are entitled by statute.

**Count IX**
**Judicial Review Under the Medicare Act and APA**
**(The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

90.     The Hospital incorporates by reference paragraphs 1-89 of this Complaint.

91.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," *id.* § 706(2)(E).

92.     The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary and capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

**Count X**
**Judicial Review Under the Medicare Act and the APA**
**(The Board's Rejection of Provider's Supplemental Filings was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

93.     The Hospital incorporates by reference paragraphs 1-92 of this Complaint.

94.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "unsupported by substantial evidence," *id.* § 706(2)(E).

95.     The Board's rejection of Provider's supplemental filing was arbitrary and capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## REQUEST FOR RELIEF

For these reasons, the Hospital respectfully requests that this Court enter an order:

a.  Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal.

b.  Directing the Secretary to direct its MAC to audit the Hospital's listing of section 1115 waiver days and Medicaid Eligible days and accept all verified days and include them in the Medicaid Fraction of the Hospital's Disproportionate Patient Percentage for purposes of its DSH Adjustment.

c.  Awarding the Hospital's costs and reasonable attorneys' fees, and for interest and such other and further relief that the Court deems appropriate.

Dated: June 17, 2025                           Respectfully submitted,

/s/ *Lori Rubin Garber*

Lori Rubin Garber
D.C. Bar No. 1004240
**FOLEY & LARDNER LLP**
3000 K Street N.W.
Suite 600
Washington, D.C. 20003
Phone: (202) 672-5300
Email: lori.garber@foley.com

**ATTORNEY FOR PLAINTIFF
HOUSTON METHODIST SUGAR
LAND HOSPITAL**